# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

JASON MICHAEL FOX,

       Defendant-Appellant.

UNPUBLISHED
May 21, 2015

No. 315546
Wayne Circuit Court
LC No. 12-001661-FH

Before: MURPHY, P.J., and STEPHENS and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree home invasion, MCL 750.110a(2), possession of burglary tools, MCL 750.116, larceny in a building, MCL 750.360, and assault, MCL 750.81(1).[1] Defendant was sentenced to concurrent terms of 10 to 20 years' imprisonment for the first-degree home invasion conviction, 5 to 10 years' imprisonment for the possession of burglary tools conviction, two to four years' imprisonment for the larceny in a building conviction, and 90 days' imprisonment for the assault conviction. We affirm.

## I. DEFENDANT'S BRIEF ON APPEAL

### A. ADJOURNMENT OF TRIAL

Defendant first contends that the trial court erred in failing to grant his emergency motion to adjourn trial to engage the prosecution in further plea negotiations. "We review the trial court's ruling on defendant's request for an adjournment or a continuance for an abuse of discretion." *People v Coy*, 258 Mich App 1, 17; 669 NW2d 831 (2003). "A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007).

---

[1] Defendant was originally charged with assaulting, resisting, or obstructing a police officer, MCL 750.81d(1); however, the jury convicted defendant of the lesser included offense of assault.

-1-

MCL 768.2 provides, in pertinent part:

> No adjournments, continuances or delays of criminal causes shall be granted by any court except for good cause shown in the manner provided by law for adjournments, continuances and delays in the trial of civil causes in courts of record: Provided, That no court shall adjourn, continue or delay the trial of any criminal cause by the consent of the prosecution and accused unless in his discretion it shall clearly appear by a sufficient showing to said court to be entered upon the record, that the reasons for such consent are founded upon strict necessity and that the trial of said cause cannot be then had without a manifest injustice being done.

To determine whether good cause exists, courts consider whether the defendant " '(1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments.' " *Coy*, 258 Mich App at 18, quoting *People v Lawton*, 196 Mich App 341, 348; 492 NW2d 810 (1992). Even when good cause exists, reversal for a denial of a motion to adjourn is unwarranted unless the defendant demonstrates prejudice. *Coy*, 258 Mich App at 18.

The trial court did not abuse its discretion in denying defendant's motion to adjourn. First, defendant did not assert a constitutional right. At the time defendant requested adjournment, the prosecutor's plea offer had expired, so defendant was merely requesting the opportunity to negotiate future plea deals. Criminal defendants have no constitutional right to be offered a plea deal. *Lafler v Cooper*, 566 US ___, ___; 132 S Ct 1376, 1387; 182 L Ed 2d 398 (2012). Therefore, defendant's motion to adjourn did not implicate constitutional rights, and both the first and second factors weigh against reversal.

Considering the third factor, the need to adjourn trial was a result of defendant's and his attorney's own delinquent conduct. Before trial, the prosecutor met with defendant multiple times to negotiate a plea deal and finally offered defendant the option of pleading guilty to first-degree home invasion with a minimum of two years' imprisonment in exchange for the dismissal of all other charges. However, defendant insisted on seeking a plea deal that did not include jail time. By the time defendant discovered that the prosecutor would not offer a better deal, the trial judge was out of town. The parties then went before another judge to address the matter, but defendant's attorney did not mention plea negotiations, and instead only asked for an adjournment. After the judge denied the request, there was no additional time before trial to enter a plea. The prosecutor had already informed defendant that no plea would be accepted on the day of trial. Considering these circumstances, the third factor also weighs against reversal.

Finally, considering the fourth factor, defendant had already made previous requests to delay trial. Defendant's trial was originally scheduled for June 2012, but defendant requested a continuance so he could undergo a psychological evaluation. The trial court granted the motion and delayed the trial until February 2013. Because defendant's motion to adjourn was not based on a constitutional right, the need for adjournment was caused by defendant's and his attorney's own conduct, and the trial court had already granted one delay, the trial court did not abuse its discretion in denying defendant's motion to adjourn.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next contends that his trial counsel was constitutionally ineffective for failing to procure and finalize the prosecution's plea offer before trial. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review a trial court's findings of fact for clear error and review questions of constitutional law de novo. *Id.*

The right to the effective assistance of counsel during a criminal trial is guaranteed by both the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. The right to counsel extends to the plea-bargaining process and the entry of a plea. *People v Pubrat*, 451 Mich 589, 593-594; 548 NW2d 595 (1996). We presume that an attorney's assistance was effective, and the challenging defendant bears the heavy burden of proving otherwise. *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009). A defendant claiming ineffective assistance of counsel during the plea bargaining process must show "(1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014) (quotation marks and citation omitted).

In the context of plea bargaining, objective standards of reasonableness require counsel to inform a defendant of favorable plea offers from the prosecution and to advise a defendant of the direct consequences of accepting such an offer. *Missouri v Frye*, 566 US ___, ___; 132 S Ct 1399, 1408; 182 L Ed 2d 379 (2012); see also *Padilla v Kentucky*, 559 US 356, 374; 130 S Ct 1473; 176 L Ed 2d 284 (2010). The decision whether to plead guilty belongs to the defendant, but it should "be made after consultation with counsel and after counsel has explained the matter to the extent reasonably necessary to permit the client to make an informed decision." *People v Corteway*, 212 Mich App 442, 446; 538 NW2d 60 (1995). To demonstrate prejudice in the context of plea bargaining, a "defendant must show the outcome of the plea process would have been different with competent advice." *Douglas*, 496 Mich at 592 (citation and quotation marks omitted). A defendant must also show a reasonable probability that "the plea offer would have been presented to the court[,] . . . that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 132 S Ct at 1385.

In this case, defendant's attorney clearly conveyed the prosecutor's plea offer to defendant, and both parties noted that defendant was unwilling to accept the offer because he wanted to seek a plea deal without jail time. On the first day of trial, defense counsel stated that the delay in accepting the prosecutor's offer was due in part to defendant's request to undergo a *Cobbs*[2] evaluation. The consistent position of both parties was that defendant continued to seek

---

[2] See *People v Cobbs*, 443 Mich 276, 283; 505 NW2d 208 (1993) ("At the request of a party, and not on the judge's own initiative, a judge may state *on the record* the length of sentence that, on the basis of the information then available to the judge, appears to be appropriate for the charged offense.").

better plea offers from the prosecution because he did not wish to serve jail time. Defense counsel's continued attempts to seek a better plea agreement, pursuant to his client's request, can properly be considered conduct that is reasonable under professional norms. *Padilla*, 559 US at 366. Although defendant later indicated he wanted to accept the offer he previously rejected, this fact does not show that defense counsel's efforts to secure a different plea deal were objectively unreasonable. See *Douglas*, 496 Mich at 592.

Moreover, defendant has not shown that he was prejudiced by his attorney's conduct. It was defendant's requests, not defense counsel's conduct, which ultimately precluded defendant from accepting the plea offer. Based on defendant's repeated requests to secure a deal with no jail time, it is unlikely that further advice from defense counsel could have persuaded him to accept the offer for a minimum of two years' imprisonment. Under these circumstances, defendant has not met his heavy burden of proving ineffective assistance of counsel. See *Seals*, 285 Mich App at 17.

## II. DEFENDANT'S STANDARD 4 BRIEF[3]
### A. MRE 404(b)

In his Standard 4 Brief, defendant first argues that the trial court erred in admitting evidence of defendant's prior bad acts through the testimony of Robert Mette and Andrea Mette. "To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Defendant did not object to Robert's and Andrea's testimony at trial, so this issue is unpreserved for appellate review. *Id.* We review unpreserved evidentiary claims for plain error affecting substantial rights. *People v Benton*, 294 Mich App 191, 202; 817 NW2d 599 (2011).

Generally, all relevant evidence is admissible unless otherwise provided for in the court rules or the state or federal constitutions. MRE 402; *People v Yost*, 278 Mich App 341, 355; 749 NW2d 753 (2008). Evidence is considered relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. However, even if evidence is relevant, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." MRE 403. "Evidence of a person's character or a trait of character is not admissible for the purposes of proving action in conformity therewith." MRE 404(a). MRE 404(b)(1) governs admission of prior bad acts evidence and provides the following:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other

---

[3] See Administrative Order No. 2004-6.

crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

To be admissible under 404(b), prior acts evidence must (1) be offered for something other than proving character or propensity, (2) be relevant, and (3) not have a probative value that is substantially outweighed by the potential for unfair prejudice. *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). The trial court may also, upon request, provide a limiting instruction regarding prior bad acts evidence pursuant to MRE 105. *Id*.

At trial, Robert and Andrea testified that defendant had previously broken into Robert's home and stolen photographs of Andrea. At the time, defendant and Andrea were married, but Andrea had filed for divorce and she was dating Robert. Robert also testified that he once saw defendant wearing all black clothing standing outside of his home late at night.

Defendant testified that on the night of the incident in this case, his ex-girlfriend, Heather Giulianelli, told him that he could come to her new boyfriend Jason Wright's house to talk. Defendant said that Giulianelli told him to go to the front door, but if Wright and Giulianelli did not answer the door it was because they were in the basement, and defendant could use the back door, which would be unlocked. Essentially, defendant claimed mistake or lack of intent to break in to Wright's home. The testimony of Robert and Andrea was pertinent to show that defendant had previously shown up to the home of his significant other's new boyfriend, in all black clothing late at night, and stolen items from the home. Thus, the testimony was proper to show "intent . . . or absence of mistake." MRE 404(b)(1). Defendant has not shown that this testimony was unfairly prejudicial or that it would be given undue weight by the jury. See *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998); MRE 403. Therefore, the trial court did not plainly err in admitting the testimony. *Benton*, 294 Mich App at 202.

## B. JURY VERDICT FORM

Defendant contends that he was denied a fair trial because the jury verdict form used at trial did not allow the jury to return a verdict of "not guilty." Claims of instructional error, including claims that a jury verdict form was improper, are reviewed de novo. *People v Wade*, 283 Mich App 462, 464; 771 NW2d 447 (2009). "[A] criminal defendant is deprived of his constitutional right to a jury trial when the jury is not given the opportunity to return a general verdict of not guilty." *Id.* at 467. In this case, each of the counts on the jury verdict form included a check option for "Not Guilty." Thus, despite defendant's contention to the contrary, the jury verdict form clearly allowed the jury to return a "not guilty" verdict for each of the charged offenses. Accordingly, defendant was not deprived of his constitutional right to a jury trial, and the trial court did not err in providing an improper verdict form.

## C. SCORING UNDER THE SENTENCING GUIDELINES

Defendant contends that the trial court sentenced him using erroneous information in his presentence investigation report (PSIR), and improperly scored a number of sentencing variables. The facts underlying a sentencing guidelines score are reviewed for clear error and must be established by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring

conditions prescribed by statute . . . is a question of statutory interpretation, which an appellate court reviews de novo." *Id.* We review a trial court's response to a claim of an inaccurate PSIR for an abuse of discretion. *People v Uphaus* (*On Remand*), 278 Mich App 174, 181; 748 NW2d 899 (2008). However, in this case on appeal, defendant does not raise the same issues regarding his PSIR that he raised below, so our review is limited plain error affecting substantial rights. *People v Lloyd*, 284 Mich App 703, 706; 774 NW2d 347 (2009); *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

## 1. PSIR INFORMATION

Before a person convicted of a felony is sentenced, a probation officer must prepare a written PSIR for the court's use. MCL 771.14(1); *People v Johnson*, 203 Mich App 579, 587-588; 513 NW2d 824 (1994). The information in the PSIR is not subject to evidentiary rules, MRE 1101(b)(3); *People v Fisher*, 442 Mich 560, 576-577; 503 NW2d 50 (1993), and need not have been admissible at trial, *People v Ericksen*, 288 Mich App 192, 206; 793 NW2d 120 (2010). At sentencing, either party may challenge the accuracy or relevancy of any information contained in the PSIR. MCL 771.14(6); *Lloyd*, 284 Mich App at 705.

At sentencing, defendant argued that there were a handful of inaccuracies in his PSIR. In response, the trial court corrected defendant's PSIR to remove references to several charges and convictions. However, defendant never contested the charges listed as "6 of 7" and "7 of 7," which he now contends on appeal are incorrect because he "was never on bond for the commission of any crime during the commission of the case at hand." Because defendant did not challenge the accuracy of these charges at sentencing, in a motion for resentencing, or in a motion to remand filed in this Court, his appeal on this issue is precluded. MCL 769.34(10); *Lloyd*, 284 Mich App at 706. Moreover, defendant has not provided any evidence supporting his claims that charges "6 of 7" and "7 of 7" in his PSIR were inaccurate. The information in a PSIR is presumed to be accurate, *People v Grant*, 455 Mich 221, 233-234; 565 NW2d 389 (1997), and the defendant has the burden of proving otherwise, *Lloyd*, 284 Mich App at 705. Therefore, defendant has not shown that the trial court erred in relying on the PSIR.

## 2. PRIOR RECORD VARIABLE (PRV) 6

Defendant argues that the trial court improperly assessed five points under PRV 6. "Prior record variable 6 is relationship to the criminal justice system." MCL 777.56(1). Under this PRV, five points should be assessed if, at the time of the current offense, "[t]he offender is on probation or delayed sentence status or on bond awaiting adjudication or sentencing for a misdemeanor." MCL 777.56(1)(d). Defendant's PSIR provides that, at the time of his current offenses, defendant was on bond for two separate misdemeanor offenses. Defendant did not produce evidence, on appeal or below, contradicting this information contained in his PSIR, and we presume the information contained in a PSIR is accurate. *Grant*, 455 Mich at 233-234. Therefore, the trial court did not clearly err in assigning five points under PRV 6.

## 3. OFFENSE VARIABLE (OV) 2

Defendant asserts that the trial court improperly assessed one point under OV 2. "Offense variable 2 is lethal potential of the weapon possessed or used" and provides that one

point should be assigned if the defendant possessed or used a potentially lethal weapon that is not otherwise listed in the statute. MCL 777.32(1)(e). At sentencing, the trial court found that defendant possessed or used a lethal weapon, i.e., a baseball bat. Defendant contends that the baseball bat that was already counted in the trial court's scoring of OV 1. This Court has held that the same weapon can support an assessment of points under both OV 1 and OV 2. See *People v Harverson*, 291 Mich App 171, 181-182; 804 NW2d 757 (2010). OV 1 deals with the aggravated use of a weapon during the commission of a crime, while OV 2 addresses the lethal potential of the various weapons listed in MCL 777.32(1)(a)-(e). Further, the phrase "other potentially lethal weapon" used in MCL 777.32(1)(e) clearly refers to the specifically listed potentially lethal weapons in that subsection, not those listed in MCL 777.31(1). A baseball bat, not specifically mentioned in MCL 777.32(1)(a)-(d), meets the definition of "other . . . weapon" for purposes of MCL 777.32(1)(e). The trial court did not err in assessing one point under OV 2.

### 4. OV 4

Defendant contends that the trial court improperly assigned 10 points under OV 4. "Offense variable 4 is psychological injury to a victim." MCL 777.34(1). If "[s]erious psychological injury requiring professional treatment occurred to a victim," the court should assess 10 points. MCL 777.34(1)(a). To support a score of 10 points under OV 4, the fact that treatment was not sought is not conclusive, but there must be some evidence of psychological injury on the record. MCL 777.34(2); *People v Lockett*, 295 Mich App 165, 182-183; 814 NW2d 295 (2012). A victim's expression of fearfulness or anger can constitute sufficient evidence of psychological injury. *People v Williams*, 298 Mich App 121, 124; 825 NW2d 671 (2012). At sentencing, Wright testified that he was the victim of a "very scary and serious crime." Wright stated that he believed defendant did not think he had done anything wrong, and this belief was "very scary" because it led Wright to think that defendant might try to retaliate against him. These expressions of fearfulness are sufficient to constitute evidence of psychological injury. *Id*. Therefore, the trial court did not err in assessing 10 points under OV 4.

### 5. OV 13

Defendant argues that the trial court improperly assessed 10 points under OV 13. OV 13 addresses a continuing pattern of criminal behavior. MCL 777.43(1). The sentencing court must assess 10 points if "[t]he offense was part of a pattern of felonious criminal activity involving a combination of three or more crimes against a person or property." MCL 777.43(1)(d). In determining the score under OV 13, "all crimes within a 5-year period, *including the sentencing offense*, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a) (emphasis added). Concurrent convictions can also support an assessment of points under OV 13. *People v Harmon*, 248 Mich App 522, 532; 640 NW2d 314 (2001). In this case, defendant was convicted of three felonies: (1) first-degree home invasion, (2) possession of burglary tools, and (3) larceny in a building. All of these offenses are crimes against a person or property. MCL 777.16f; MCL 777.16r. Therefore, the trial court did not err in assigning 10 points under OV 13.

## 6. OV 19

Defendant asserts that the trial court improperly assessed 10 points under OV 19. "Offense variable 19 is threat to the security of a penal institution or court or interference with the administration of justice or the rendering of emergency service." MCL 777.49. Ten points should be assigned if "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). "[T]he plain and ordinary meaning of 'interfere with the administration of justice' for purposes of OV 19 is to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013). Fleeing from police after an unambiguous order to stop or interfering with an attempt to secure a crime scene can constitute an interference with the administration of justice. *Id.*

At trial, City of Westland police officers John Gatti and David Skearns testified that they yelled "Westland police" before Gatti opened the basement door, at which time they saw defendant, wearing a mask, come charging up the stairs with a baseball bat raised over his head. Skearns then stunned defendant with a taser, causing him to fall down the stairs. Defendant's conduct is sufficient to prove opposition intended "to hamper, hinder, or obstruct" the administration of justice. *Hershey*, 303 Mich App at 343. The trial court did not err in assessing 10 points under OV 19.

## D. GREAT WEIGHT OF THE EVIDENCE

Defendant next contends that his convictions for larceny in a building and possession of burglary tools were against the great weight of the evidence. We review a trial court's decision that the verdict was not against the great weight of the evidence for an abuse of discretion. *People v Roper*, 286 Mich App 77, 84; 777 NW2d 483 (2009). An abuse of discretion occurs when a trial court chooses an outcome falling outside the range of reasonable and principled outcomes. *Id*.

"The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). This Court will vacate a verdict only if "the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *Id*. at 469. "Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *Id*. at 469-470 (citation and quotation marks omitted). We defer to the fact finder's resolution of conflicting testimony unless the resolution "contradicts indisputable physical facts or laws, . . . [w]here testimony is patently incredible or defies physical realities, . . . [w]here a witness's testimony is material and is so inherently implausible that it could not be believed by a reasonable juror, . . . or where the witness'[s] testimony has been seriously impeached and the case marked by uncertainties and discrepancies." *People v Lemmon*, 456 Mich 625, 643-644; 576 NW2d 129 (1998) (citations and quotation marks omitted; first and second alterations in original).

The elements of larceny in a building are (1) the actual or constructive taking of the property of another, (2) without the consent of the owner, (3) an asportation of the goods, (4) with felonious intent, and (5) the taking occurring within the confines of the building. MCL 750.360; *People v Sykes*, 229 Mich App 254, 278; 582 NW2d 197 (1998). Larceny is a specific intent crime, and the prosecution must prove that a defendant specifically intended to steal another person's property. *People v Cain*, 238 Mich App 95, 120; 605 NW2d 28 (1999). A conviction for possession of burglary tools requires proof that "[1] defendant possessed tools adapted and designed for breaking and entering, [2] that defendant had knowledge that the tools were adapted and designed for that purpose, and [3] that the defendant possessed them with the intent to use them for breaking and entering." *People v Wilson*, 180 Mich App 12, 16; 446 NW2d 571 (1989); see also MCL 750.116.

Defendant contends that the prosecution did not proffer any evidence to support the intent element of either crime. "An actor's intent may be inferred from all of the facts and circumstances, . . . and because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient." *People v Fetterley*, 229 Mich App 511, 517-518; 583 NW2d 199 (1998) (citation omitted). After defendant was placed under arrest, the officers checked defendant's pockets and found a spare set of keys to Wright's Ford Explorer, and a flashlight that defendant identified as belonging to Wright. When Wright later checked his home, he noticed that condoms were missing from his dresser drawer, and some liquor was missing from his freezer. Additionally, officers later returned a wallet and some paper notes to Giulianelli that defendant had taken from her purse, which was in Wright's home at the time of the incident. Defendant admitted at his arrest that the flashlight on his person belonged to Wright. Considering this circumstantial evidence, we can infer felonious intent on behalf of defendant to support the larceny in a building conviction. *Fetterley*, 229 Mich App at 517-518.

Regarding defendant's intent to possess burglary tools, officers found pieces of broken sparkplugs, colloquially known as "ninja rocks," which are frequently used to break windows, on defendant's person at the time of arrest. The presence of the broken sparkplug pieces on defendant's person and their physical property of being able to cut through windows quickly and quietly are sufficient to infer defendant's intent. *Wilson*, 180 Mich App at 16; *Fetterley*, 229 Mich App at 517-518. Moreover, such an inference is unnecessary in this case because defendant told Sergeant Kyle Dawley during an interrogation that he possessed the pieces of broken sparkplugs specifically for their ability to break through windows. Although defendant testified at trial that he did not have broken sparkplug pieces at the time of the offense, this conflicting testimony is an insufficient ground to warrant a new trial. *Lacalamita*, 286 Mich App at 469-470. Defendant's convictions were not against the great weight of the evidence.

## E. PROSECUTORIAL ERROR[4]

Defendant next contends that the prosecutor committed error requiring reversal during closing arguments. A claim of prosecutorial error generally must be met with a contemporaneous objection or a request for a curative instruction at trial. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Review of prosecutorial error is precluded unless "an objection could not have cured the error, or a failure to review the issue would result in a miscarriage of justice." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). Defendant never objected to the alleged instances of prosecutorial error at trial, so his claims are unpreserved and our review is limited to plain error. *Id.* "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id.*

The test for prosecutorial error is whether the prosecutor's conduct denied a defendant a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Issues regarding prosecutorial error are decided on a case-by-case basis, and the reviewing court must examine the record and evaluate a prosecutor's remarks in context. *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010). A prosecutor may not vouch for the credibility of a witness to the effect that he has some special knowledge that the witness is testifying truthfully. *Seals*, 285 Mich App at 22. A prosecutor may, however, argue from the facts in evidence that a witness is worthy or not worthy of belief. *Id.*

Defendant notes two specific instances during closing arguments that be believes constitute prosecutorial error. First, the prosecutor argued the following to the jury:

> You heard . . . witnesses in this case testify for the Defendant. They got there, and their point, I guess, was to spare [Giulianelli], call her a drunk and a liar. They didn't know they were testifying until a few months ago.

> I ask how many of you, if I put you on the spot right now and ask if you could remember what you were doing six or seven months ago on a Friday, exactly what you were doing and what time, I think you would all have a hard time doing that.

> But, no, they took the stand, oh, between 6:30 and 10, 10:30, they both said the same thing, this is where the Defendant was.

> This is to negate [Giulianelli's] testimony that she was being followed before this incident happened in the morning at [Wright's] house. The Defendant will do anything. He will do anything, but to avoid responsibility.

---

[4] Although defendant phrases his claim as one of "prosecutorial misconduct," this Court recently noted that in most such claims the term "misconduct" is a misnomer. *People v Cooper*, ___ Mich App ___, ___; ___ NW2d ___ (2015); slip op at 7-8. Therefore, we will refer to defendant's claim as one regarding prosecutorial error.

The prosecutor argued that defendant's witnesses were not credible, or may have had their testimony coached, and therefore, they were not worthy of belief. Thus, the argument follows, Giulianelli's testimony that defendant was following her earlier on the day of the incident should be believed. A prosecutor may comment on her own witness's credibility during closing arguments, especially where, as here, "there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). This type of argument is proper in closing arguments, as long as it arises from the facts in evidence. *Seals*, 285 Mich App at 22. The prosecutor's comments do not constitute error.

Next, defendant objects to the following statements by the prosecutor during her rebuttal argument:

> Now, the Defendant in this case is insisting that he was invited. I want you to think about this rationally with the totality of the circumstances in this case that you've heard about.

> The Defendant had an opportunity to write down a statement. He wrote down the statement in his own hand. He even made a statement at the scene apologizing to [Giulianelli].

> At no time did the Defendant ever say you invited me over here, [Giulianelli] invited me over here, I was a wanted guest.

> That[] wasn't something that we've heard until the Defendant elected to take the stand in this case, until the trial started. It doesn't make any sense, okay?

> The Defendant waited to give that testimony simply because it's not true, it didn't happen. If it had happened, it would have been the first thing he would have been shouting through the roof top when the police grabbed up the stairs and when Sergeant Dawley sat down with him in the room.

Much like the first remarks, in these statements, the prosecutor was arguing from the facts in evidence that defendant's testimony at trial should not be believed. *Seals*, 285 Mich App at 22. This is a proper matter for closing arguments, and therefore, defendant cannot show any prosecutorial error. Moreover, the trial court properly instructed the jury that "[t]he lawyers' statements and arguments and any commentary are not evidence." "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Defendant has not shown plain error affecting his substantial rights. *Callon*, 256 Mich App at 329.

### F. JUDICIAL BIAS

Defendant contends that he is entitled to a new trial because the trial judge was biased against him. In order to preserve an issue of judicial bias, a defendant must raise a claim of judicial bias in the trial court. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). Defendant did not raise any claim of judicial bias in the trial court, so this issue is

unpreserved and we review it for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

A defendant has the right to a fair and impartial trial under both the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. The test for judicial bias is whether a judge's actions unduly influenced the jury and deprived a defendant of a fair and impartial trial. *Jackson*, 292 Mich App at 598. "A party that challenges a judge for bias must overcome a heavy presumption of judicial impartiality." *People v Wells*, 238 Mich App 383, 391; 605 NW2d 374 (1999). On appeal, defendant cites no specific instances of judicial bias, beyond a blanket statement that the "[t]rial court committed further error by violating Cannon [sic] two and Cannon [sic] three of the Michigan Code of Judicial Conduct . . . multiple times during trial." Without providing any evidence or instances of wrongdoing, defendant cannot overcome the presumption of judicial impartiality. *Wells*, 238 Mich App at 391. Therefore, defendant has not met his burden of proving that the trial judge was biased, or that the alleged bias affected his substantial rights.

## G. SENTENCING ERROR

Finally, defendant contends that the trial judge improperly considered victims' letters during the sentencing proceedings. A defendant may not challenge on appeal the accuracy of information relied upon in determining a sentence that was within the appropriate guidelines range unless he raised the issue at sentencing, in a motion for resentencing, or in a motion to remand filed in this Court. MCL 769.34(10); *Lloyd*, 284 Mich App at 706. Defendant did not object to any alleged use of victims' letters during sentencing, so we review this issue for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

Defendant bases his claim of error on *United States v Hayes*, 171 F3d 389 (CA 6, 1999). In *Hayes*, the Sixth Circuit held that a trial court committed plain error by relying heavily on letters from victims at sentencing to impose the maximum allowed sentence when the defendant had no notice or opportunity to see the letters beforehand. *Id*. at 393. In *People v McAllister*, 241 Mich App 466; 616 NW2d 203 (2000), remanded in part on other grounds 465 Mich 884 (2001), this Court addressed a similar situation, and held that when a trial court "merely acknowledged that it had received letters . . . regarding the effect that the injuries had on the victim" without providing notice to a defendant, no error occurred. *Id*. at 475. This Court noted that the *Hayes* court "erroneously classified the letters received from victims as evidence." *Id*. at 476. This Court further stated that it was "confident that trial judges of this state are able to separate the evidence at trial from the subjective requests of victims or their family members as stated in letters submitted to the court." *Id*.

Below, the trial court made the following single mention of victims' letters:

The Court has had an opportunity to review the Pre-sentence Investigation Report, and make corrections or modifications, have gone over the guidelines, made changes in those, I've heard from [defense counsel] on behalf of [defendant], I've heard from one of the Complainants, [Wright], also from the Prosecutor, . . . and I've heard from [defendant].

-12-

> I did receive some letters from the Mettes concerning sentencing, and I can state categorically that I've heard no substantial and compelling reasons that an appellate court would uphold for going under the guidelines in this case.

In this case, like in *McAllister*, the trial court simply acknowledged that it received letters from victims. The trial court sentenced defendant to a term within his guidelines range, and merely referenced the letters to contradict defendant's plea for a below-guidelines sentence. Under these circumstances, defendant has not shown that the trial court's actions were plainly erroneous or that they affected his substantial rights.

Affirmed.

/s/ William B. Murphy
/s/ Cynthia Diane Stephens
/s/ Michael F. Gadola